IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 14, 2015 Session

**IN RE DESTANEY D. ET AL.**

**Appeal from the Juvenile Court for Rhea County**
**No. 11-JV-39      James W. McKenzie, Judge**

---

**No. E2014-01651-COA-R3-PT – Filed June 23, 2015**

---

This is a termination of parental rights action involving two minor children, Destaney D. and Rebekah D. ("the Children"). In April 2012, the Tennessee Department of Children's Services ("DCS") removed the Children from their mother due to her drug use. The Children were allowed to remain in the care of Amy M. and Jeremy M., a married couple with whom the Children had been residing following their mother's arrest. On February 21, 2014, Amy M. and Jeremy M. ("the Petitioners") filed a petition to terminate the parental rights of the Children's parents. The petition alleged, as a statutory ground for termination, abandonment by willful failure to support. The Petitioners subsequently filed an amended petition alleging the additional statutory ground of persistence of the conditions leading to removal. Despite being properly served with process, the Children's mother failed to answer the petition or otherwise make an appearance in this matter. The trial court accordingly terminated her parental rights by default judgment entered on July 21, 2014. She is not a party to this appeal. Following a bench trial on the merits, the trial court granted the petition as to the father upon finding that the Petitioners had proven by clear and convincing evidence the grounds of (1) abandonment by willful failure to support and (2) persistence of the conditions leading to removal. The court also found clear and convincing evidence that termination of the father's parental rights was in the Children's best interest. The father has appealed. Having determined that the statutory ground of persistence of conditions is inapplicable to the present action, we reverse the trial court's determination as to this ground. We affirm the trial court's judgment in all other respects, including the termination of the father's parental rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed in part, Reversed in part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Larry G. Roddy, Dayton, Tennessee, for the appellant, William D.

Randy Sellers, Cleveland, Tennessee, for the appellees, Amy M. and Jeremy M.

**OPINION**

I. Factual and Procedural Background

William D. ("Father") is the biological father of two children: Destaney D., now age fourteen, and Rebekah D., now age twelve. In April 2012, while the Children were in the legal custody of their mother, DCS received a referral regarding allegations of drug abuse by the mother. Upon investigation, those allegations were sustained. The Children's mother had also been arrested, apparently leaving the Children with no caretaker. As a result, the Children had been residing with the Petitioners, with whom the Children had become acquainted at church.

Upon learning of DCS's involvement with the Children, Father and Laura D., Father's current wife, picked up the Children from school and transported them to the home that Father and Laura D. shared. Because the DCS caseworker had received information that Father might also be involved with drugs, she visited Father's home and sought drug tests from both Father and Laura D. Father admitted to the caseworker that he had been receiving unprescribed hydrocodone from a co-worker on a regular basis for approximately one year. Father claimed that he was taking the hydrocodone to treat back pain. In turn, the caseworker performed a drug screen, which confirmed that opiates existed in Father's system. In addition, Laura D. submitted to a drug screen and tested positive for amphetamines, opiates, methadone, propoxyphene, and marijuana. Consequently, DCS returned the Children to the Petitioners' home. An immediate protection agreement was entered on April 16, 2012, wherein the parents consented to allow the Children to remain in the custody of the Petitioners until the parents could complete the requirements of their permanency plans.

Over the course of the next two years, the Children resided with the Petitioners and participated in some co-parenting time with Father. Father acknowledged at trial that he was employed throughout most of this time period and had been ordered to pay child support of fifty dollars per week directly to the Petitioners. During a hearing held in June 2013, Destaney testified, *inter alia*, that she had witnessed the presence of drugs inside Father's home. At the conclusion of the June 2013 hearing, the trial court ordered Father to submit to a drug and alcohol assessment within fifteen days. The court also ordered

2

Father to submit to a weekly drug screen at the DCS office.

The Petitioners filed their termination of parental rights petition on February 21, 2014. The Petitioners alleged that Father had abandoned the Children by willfully failing to support them for more than four months preceding the date of the filing of the petition. In their amended petition, filed on March 4, 2014, the Petitioners alleged the additional statutory ground of persistence of conditions leading to removal of the Children. Following a bench trial conducted on July 9, 2014, the court terminated the parental rights of Father based on abandonment for failure to support and persistence of conditions. Father has appealed.

## II. Issues Presented

Father presents the following issues for our review, which we have restated slightly:

1. Whether DCS made reasonable efforts to reunite the Children with Father.

2. Whether the trial court erred in terminating the parental rights of Father based on abandonment for failure to support.

3. Whether the trial court erred in terminating the parental rights of Father based on persistence of conditions leading to the Children's removal.

4. Whether the termination of Father's parental rights is in the best interest of the Children.

## III. Standard of Review

In a termination of parental rights case, this Court has a duty to determine "whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence." *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006). The trial court's findings of fact are reviewed *de novo* upon the record, accompanied by a presumption of correctness unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d); *In re F.R.R., III*, 193 S.W.3d at 530. Questions of law, however, are reviewed *de novo* with no presumption of correctness. *In re Bernard T.*, 319 S.W.3d 586, 597 (Tenn. 2010). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be

3

disturbed absent clear and convincing evidence to the contrary. *See Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002).

"Parents have a fundamental constitutional interest in the care and custody of their children under both the United States and Tennessee constitutions." *Keisling v. Keisling*, 92 S.W.3d 374, 378 (Tenn. 2002). It is well established, however, that "this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). As our Supreme Court has instructed:

> In light of the constitutional dimension of the rights at stake in a termination proceeding under Tenn. Code Ann. § 36-1-113, the persons seeking to terminate these rights must prove all the elements of their case by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c); *In re Adoption of A.M.H.*, 215 S.W.3d at 808-09; *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). The purpose of this heightened burden of proof is to minimize the possibility of erroneous decisions that result in an unwarranted termination of or interference with these rights. *In re Tiffany B.*, 228 S.W.3d 148, 155 (Tenn. Ct. App. 2007); *In re M.A.R.*, 183 S.W.3d 652, 660 (Tenn. Ct. App. 2005). Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005), and eliminates any serious or substantial doubt about the correctness of these factual findings. *In re Valentine*, 79 S.W.3d at 546; *State Dep't of Children's Servs. v. Mims* (In re N.B.), 285 S.W.3d 435, 447 (Tenn. Ct. App. 2008).

*In re Bernard T.,* 319 S.W.3d at 596.

## IV. Reasonable Efforts Toward Reunification

Father asserts that the Petitioners failed to demonstrate that DCS had expended reasonable efforts to reunite him with the Children. As our Supreme Court has recently elucidated, however:

> [I]n a termination proceeding, the extent of DCS's efforts to reunify the family is weighed in the court's best-interest analysis, but proof of reasonable efforts is not a precondition to termination of the parental rights of the respondent parent. As with other factual findings made in connection with the best-interest analysis, reasonable efforts must be

proven by a preponderance of the evidence, not by clear and convincing evidence. *In re Audrey S.*, 182 S.W.3d at 861. After making the underlying factual findings, the trial court should then consider the combined weight of those facts to determine whether they amount to clear and convincing evidence that termination is in the child's best interest. *See In re Adoption of Kleshinski,* No. M2004-00986-COA-R3-CV, 2005 WL 1046796, at *17 (Tenn. Ct. App. May 4, 2005) (citing *In re M.J.B.*, 140 S.W.3d 643, 654 (Tenn. Ct. App. 2004)), *see also In re Giorgianna H.*, 205 S.W.3d at 516; *Tenn. Dep't of Children's Servs. v. T.M.B.K.*, 197 S.W.3d 282, 288 (Tenn. Ct. App. 2006).

*In re Kaliyah S.*, 455 S.W.3d 533, 555-556 (Tenn. 2015). Therefore, we will consider the efforts made by DCS to reunite Father with the Children as we specifically address the best interest of the Children in the final section of this opinion.

## V. Statutory Abandonment

In its judgment terminating Father's parental rights, the trial court found clear and convincing evidence establishing Father's willful failure to support the Children.[1] Father admitted during his trial testimony that he maintained a duty to pay child support of fifty dollars per week pursuant to an existing court order.

Tennessee Code Annotated § 36-1-113 (2014) lists the statutory grounds for termination of parental rights, providing as follows in pertinent part:

(a) The chancery and circuit courts shall have concurrent jurisdiction with the juvenile court to terminate parental or guardianship rights to a child in a separate proceeding, or as a part of the adoption proceeding by utilizing any grounds for termination of parental or guardianship rights permitted in this part or in title 37, chapter 1, part 1 and title 37, chapter 2, part 4.

* * *

(c) Termination of parental or guardianship rights must be based upon:

(1) A finding by the court by clear and convincing evidence

---

[1] We note that Father failed to raise this as an issue in his appellate brief. This Court has previously held that because "[o]nly one ground must be proven for termination of parental rights[,] [a] parent's failure on appeal to challenge one ground for termination when multiple grounds were found by the trial court relieves us of the need to review grounds." *In re Autumn L*, No. E2014-01240-COA-R3-PT, 2015 WL 3378869 at *7 (Tenn. Ct. App. May 26, 2015). However, due to the constitutional dimension of Father's parental rights at issue, we have chosen to fully review and address this ground.

that the grounds for termination of parental or guardianship rights have been established; and

(2) That termination of the parent's or guardian's rights is in the best interests of the child.

Regarding abandonment through willful failure to support, Tennessee Code Annotated § 36-1-113(g)(1) provides, as a statutory ground for termination:

(1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred . . . .

Tennessee Code Annotated § 36-1-102(1)(A) (2014) defines abandonment, in relevant part, as:

(i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or the guardian or guardians either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child . . . .

Pursuant to the statute, the court must find that a parent's failure to visit or support was willful. *In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007). As this Court has previously explained:

The concept of "willfulness" is at the core of the statutory definition of abandonment. A parent cannot be found to have abandoned a child under Tenn. Code Ann. § 36-1-102(1)(A)(i) unless the parent has either "willfully" failed to visit or "willfully" failed to support the child for a period of four consecutive months.

*In re Audrey S.*, 182 S.W.3d 838, 863 (Tenn. Ct. App. 2005).

Failure to visit or support a child is "willful" when a person is "aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so." *Id.* at 864. Further, failure to visit or to support is not excused by another person's conduct "unless the conduct actually prevents the person with the obligation from performing his or her duty . . . or amounts to a significant restraint of or interference with the parent's efforts to support or develop a relationship with the child." *Id.*

6

This Court further explained:

The willfulness of particular conduct depends upon the actor's intent. Intent is seldom capable of direct proof, and triers-of-fact lack the ability to peer into a person's mind to assess intentions or motivations. Accordingly, triers-of-fact must infer intent from the circumstantial evidence, including a person's actions or conduct.

*Id.* (citations omitted).

This Court has often held that a parent's demeanor and credibility as a witness play "an important role in determining intent, and trial courts are accordingly in the best position to make such determinations." *In re Adoption of Destiny R.D.*, No. M2011-01153-COA-R3-PT, 2012 WL 1066496 at *7 (Tenn. Ct. App. Mar. 27, 2012) (citing *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003)). Further, as Tennessee Code Annotated § 36-1-102(1)(G) expressly provides: "[I]t shall not be required that a parent be shown to have evinced a settled purpose to forego all parental rights and responsibilities in order for a determination of abandonment to be made."

The trial court specifically determined that Father had abandoned the Children based upon his willful failure to support them during the statutorily determinative period established as the four consecutive months immediately preceding the filing of the petition: October 20, 2013 to February 20, 2014. *See In re Jacob C. H.*, No. E2013-00587-COA-R3-PT, 2014 WL 689085 at *6 (Tenn. Ct. App. Feb. 20, 2014) ("the applicable four month window for determining whether child support has been paid in the context of the ground of willful failure to support includes the four months preceding the day the petition to terminate parental rights is filed but excludes the day the petition is filed."). Father asserts that he did financially support the children because he contributed fifty dollars toward the purchase of a dress for Destaney in December 2013, spent two hundred dollars on clothes and a Halloween outfit for the Children in October 2013, and purchased electronic tablets for the Children as Christmas 2013 presents. Father testified that he could not pay more because he "was paying $50 a week to take drug classes and bankruptcy was taking [his] whole check." The Petitioners denied that Father gave them any money in December 2013 and further clarified that Father's purchase of a few items of clothing for the Children occurred in August 2013.

Father admitted that he was gainfully employed at a Kentucky Fried Chicken restaurant during the determinative time period. Despite Father's claims regarding his bankruptcy proceedings, he acknowledged that he did not inform his bankruptcy attorney that he was obligated to pay child support. Further, he did not follow through with the

bankruptcy proceedings. Father also admitted his receipt of a $4,000 federal tax refund sometime in 2013.

The Petitioners testified that during the four months preceding the filing of the termination petition, Father paid no more than one fifty-dollar support payment. Amy M. testified that she and her husband received the fifty-dollar payment from Father in "mid-October." The evidence is therefore unclear whether this payment was in fact made within the determinative period, which did not begin until October 20, 2013. Further, Father was unable to demonstrate that he had paid any support during the relevant period other than one payment sent in late September or early October 2013. Therefore, based upon our thorough review of the record, we conclude that the trial court properly found clear and convincing evidence of this statutory ground for termination of parental rights. Under the circumstances of the case at bar, one payment during the determinative period would, at most, constitute mere token support. *See* Tenn. Code Ann. § 36-1-102 (1)(B) (defining "token support" as "support, under the circumstances of the individual case, [which] is insignificant given the parent's means").

VI. Persistence of Conditions Leading to Removal

Tennessee Code Annotated § 36-1-113 (g) (2014) provides the following as an alternate ground for termination of parental rights:

(3) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:

(A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent or parents or the guardian or guardians, still persist;

(B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent or parents or the guardian or guardians in the near future; and

(C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home . . . .

The legal deficiency concerning the trial court's determination regarding this ground for termination lies in the fact that the Children were not removed from Father's

8

home. The testimony at trial established that the reason for the Children's removal was drug abuse by the mother when the Children were in the mother's custody. While the caseworker did testify that the Children could not be placed with Father due to Father's drug use, the record contains no order removing the Children from Father's home. As this Court has explained in a factually similar case:

> [T]he Children were not removed from Father's home. Moreover, foster care worker Crook testified unequivocally at the termination hearing that the reason for the Children's removal was the environmental neglect resulting from the dangerous and unsanitary conditions at Mother's residence. In the recent case of *In re Maria B.S.*, 2013 WL 1304616, we were presented with a similar situation where a father's parental rights were terminated on a finding of persistence of conditions and the children had not been removed from his home. We stated as follows:
>
>> Father was incarcerated at the time of the Children's birth. No one removed the Children from Father—he never had the Children in the first place. There is case precedent to support Father's position that, without removal from that parent's home, the ground of persistent conditions is inapplicable. *See In re T.L.*, No. E2004-02615-COA-R3-PT, 2005 WL 2860202, at *7 (Tenn. Ct. App. Oct. 31, 2005), Rule 11 appl. perm. appeal denied Feb. 17, 2006; *In re D.L.B.*, No. W2001-02245-COA-R3-CV, 2002 WL 1838147, at *9 (Tenn. Ct. App. Aug. 6, 2002), rev'd on other grounds, 118 S.W.3d 360 (Tenn. 2003); *In re B.P.C.*, M2006-02084-COA-R3-PT, 2007 WL 1159199, at *7 (Tenn. Ct. App. April 18, 2007), no appl. perm. appeal filed.

*In re K.M.K.*, No. E2014-00471-COA-R3-PT, 2015 WL 866730 at *7 (Tenn. Ct. App. Feb. 27, 2015).

As in the *In re K.M.K.* decision, we hold that the statutory ground of persistence of conditions is not applicable to Father under the circumstances presented here inasmuch as the record contains no court order removing the Children from Father's home. We note that the Petitioners recently filed a Motion to Supplement the Appellate Record in this Court, attaching an order entered by the trial court on November 8, 2012, wherein the Children were found to be dependent and neglected. The Petitioners assert that this order demonstrates that the Children were removed from Father's home. We grant the motion seeking to supplement the appellate record with the November 8, 2012 order, noting that Father did not object to its consideration. The inclusion of this order in the appellate

9

record does not change the resolution of this issue, however, because it does not establish that the Children were removed from the home of Father. The order states in pertinent part:

> Upon agreement by the mother, the Court found that sufficient evidence exists to find the minor children, Destaney and Rebekah, dependent and neglected pursuant to T.C.A. §37-1-102(B); it is contrary to the children's best interest to remain in the home; it was reasonable to make no effort to maintain the children in the home due to the circumstances of the family and the children; there was no less drastic alternative than removal; and it currently is in the best interest of the minor children to remain in the custody of [the Petitioners].

> As to the father, [William D.], the Court reserved a finding at this time. [Father] and his wife, Laura, are to complete an alcohol and drug assessment with Brenda Thomas at Restoration Counseling within 15 days. When the Court has received the assessment[s] and reviewed them, the Court will set a return date.

In this order, the trial court clearly found that the Children were dependent and neglected while in the custody of their mother, but it made no such finding with regard to Father. Instead, the court reserved that issue for further hearing. Accordingly, there exists no order in the record that removes the Children from Father's home. We must therefore reverse the trial court's finding as to persistence of conditions as a statutory ground for terminating Father's parental rights due to the absence of such an order.

## VII. Best Interest of Children

When at least one ground for termination of parental rights has been established, as here, the petitioners must then prove, by clear and convincing evidence that termination of the parent's rights is in the child's best interest. *See White v. Moody*, 171 S.W.3d 187, 192 (Tenn. Ct. App. 1994). When a parent has been found to be unfit by the establishment of a ground for termination, the interests of parent and child diverge, and the focus shifts to what is in the child's best interest. *In re Audrey S.*, 182 S.W.3d at 877. Further, the best interest of a child must be determined from the child's perspective and not the parent's. *White*, 171 S.W.3d at 194.

Tennessee Code Annotated § 36-1-113(i) lists the following factors for consideration:

> (1) Whether the parent or guardian has made such an adjustment of

10

circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

In analyzing the best interest factors, the trial court concluded at the close of all proof that "it is in the best interest that the children be – that [Father's] rights to the children be terminated because the children deserve better than what's been provided by [Father] or his wife." The court noted that Father and his wife were still married despite her having tested positive for controlled substances. The court also found that the

Petitioners had provided for all of the Children's needs while Father had failed to do so. Further, the court considered the Petitioners' obvious love for the Children. The trial court ultimately determined by clear and convincing evidence that it was in the Children's best interest to terminate Father's parental rights. We agree.

Our review of the evidence in light of the statutory factors listed above reveals that Father did not demonstrate that he had made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the Children's best interest to be in his home. Father repeatedly failed drug screens or failed to submit to drug screens during the time the Children were in the Petitioners' custody. At the termination hearing in July 2014, Father testified that he had participated in "drug classes," but the proof showed that he had failed a drug screen that was administered in February 2014, close in time to the filing of the termination petition. Father repeatedly claimed that he had valid prescriptions but failed to produce them. When questioned at trial regarding whether he thought he had a drug problem, Father replied that he did not. The evidence does not preponderate against the trial court's finding that Father had failed to address his substance abuse problem.

Father also did not demonstrate that he had effected a lasting adjustment after reasonable efforts made by social service agencies. DCS was the only social service agency shown to be involved in this case, having received a referral in April 2012 regarding the mother's drug abuse, which led to DCS's petitioning the trial court for a finding of dependency and neglect. Father argues that DCS did not make reasonable efforts to reunite him with the Children. Specifically, Father testified that at a previous hearing, "the DCS lady sat here and testified that I came to Dayton DCS office and I asked for a drug test and she testified that she could not drug test me."

This Court has previously stated that "[r]easonable efforts entail more than simply providing parents with a list of service providers and sending them on their way. The Department's employees must use their superior insight and training to assist parents with the problems the Department has identified . . . ." *In re Kaliyah S.*, 455 S.W.3d at 556 (quoting *In re C.M.M.*, No. M2003-01122-COA-R3-PT, 2004 WL 438326 at *7 (Tenn. Ct. App. Mar. 9, 2004)).

In the instant case, the preponderance of the evidence indicates that DCS made reasonable efforts to assist Father in this matter. DCS has been involved in this case since its inception in April 2012 when the Children were removed from the mother's custody and an agreement was entered, with the parents' consent, allowing the Children to reside with the Petitioners. DCS entered into permanency plans with the parents and provided referrals for drug and alcohol assessments for Father and his wife. DCS workers further testified that they attempted to contact Father on several occasions to

administer the court-ordered drug screens but that they were unable to reach him. On rare occasions when the DCS workers were able to speak to Father and set up appointments, he did not keep the appointments. Father only submitted to one drug screen requested by DCS, that being in November 2013 after a DCS employee made a surprise visit to his residence. Father tested postive for opiates on that occasion. Father admitted that although he had been admonished by the trial court following a hearing in December 2013 to demonstrate that he was drug-free and then file a petition to re-establish visitation if he wished to request a return of his Children, he never did so. Father acknowledged that while he did undergo the court-ordered alcohol and drug assessment, he received some treatment for his drug problem. Notwithstanding, he tested positive for opiates at the approximate time the termination petition was filed. Ergo, despite the efforts of DCS, Father demonstrated no lasting adjustment of circumstance, conduct, or conditions.

The evidence did not establish that Father exercised regular visitation with the Children or whether there existed a meaningful relationship between Father and the Children. Destaney testified regarding her observation of the presence of drugs in Father's home. She stated that although she loved Father, she did not agree with the decisions he had made. Moreover, Destaney explained that when she confronted Father concerning his drug use, he replied, "it's not [your] problem, it won't hurt [me], don't worry about it." A change of caretakers would likely have a negative effect on the Children's emotional and psychological condition, based on Destaney's testimony that she wished to remain with the Petitioners. In this regard, Amy M. testified that she and her husband loved the Children and wished to adopt them. She also testified that the Children were thriving in their care.

Regarding the remaining factors, there was no proof that Father or anyone residing with him had shown abuse or neglect toward the Children, except through the use of illicit drugs by Father and his wife. There were concerns raised, however, about Father sleeping in the same bed as the female Children. Due to his drug use, Father could not show his home to be healthy and safe for the Children. Finally, as reviewed above, Father failed to pay regular support for the Children.

Based on our review of the evidence in light of the statutory factors, we conclude that the trial court did not err in finding clear and convincing evidence that termination of Father's parental rights was in the best interest of the Children. We affirm the trial court's determination regarding the Children's best interest.

VIII.  Conclusion

For the reasons stated above, we affirm the judgment of the trial court terminating the parental rights of Father based on the ground of abandonment by willful failure to support the Children.  We reverse the trial court's finding regarding the ground of persistence of conditions, as this statutory ground cannot apply.  The trial court's judgment terminating Father's parental rights is affirmed in all other respects.  Costs on appeal are taxed one-half to the appellant, William D., and one-half to the appellees, Amy M. and Jeremy M.  This case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment and collection of costs assessed below.

_____
THOMAS R. FRIERSON, II, JUDGE